Estate of Jones v Parkview Operating Co., LLC (2025 NY Slip Op 50758(U))

[*1]

Estate of Jones v Parkview Operating Co., LLC

2025 NY Slip Op 50758(U)

Decided on May 13, 2025

Supreme Court, Westchester County

Marx, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 13, 2025
Supreme Court, Westchester County

The Estate of Jennifer V. Jones, by its Administrator, CHARICE GAINS, Plaintiff,

against
Parkview Operating Co., LLC d/b/a WESTCHESTER CENTER FOR REHABILITATION & NURSING; 
 ABC CORPORATION, ABC PARTNERSHIP, Defendants.

Index No. 56462/2024

Plaintiff: 
NAPOLI SHKOLNIK PLLC 
400 Broadhollow Rd. Ste. 305
Melville, New York 11747 
(212) 397-1000
[email protected]
NSPR LAW SERVICES LLC
Wilbert Méndez-Marrero
1302 Ponce de León Ave.
San Juan, Puerto Rico 00907
(787) 493-5088
[email protected]
Defendant Parkview Operating Co., LLC d/b/a/ Westchester Center for Rehabilitation & Nursing: 
Jeffrey T. Wolber, Esq.
Hall Booth Smith, P.C.
366 Madison Avenue, 5th Floor
New York, New York 10017
(212) 805-3630
[email protected]

Paul I. Marx, J.

The papers filed electronically on NYSCEF numbered 84 through 91 were read on the motion of Defendant Parkview Operating Co., LLC d/b/a/ Westchester Center for Rehabilitation & Nursing ("WCRN") to resettle and/or modify the Court's Decision and Order dated October 21, 2024, denying WCRN's motion to dismiss, and to reargue the motion to dismiss.
Upon reading the foregoing papers, it is ORDERED that Defendant's motion is disposed as follows.
BACKGROUND
This action arises from the death of Jennifer V. Jones, a former resident of WCRN, who allegedly contracted COVID-19 at WCRN and "suffered from acute encephalopathy, respiratory failure with hypoxia, PNA, severe sepsis, and multiple pressure injuries, all of which caused her extreme conscious pain and suffering" and death at Montefiore New Rochelle Hospital.[FN1]
Complaint at ¶ 125.
Defendant filed a pre-answer motion to dismiss the claims brought by Ms. Jones's Estate under Public Health Law §§ 2801-d and 2803-c; negligence; negligence per se based upon violations of the Federal Nursing Home Reform Act (OBRA), 42 C.F.R. Part 483, and other federal statues, rules and regulations, and 10 NYCRR § 415 and other New York State and County statues, rules, and regulations; conscious pain and suffering; wrongful death; gross negligence; nursing home malpractice and professional negligence. Defendant asserted that it is immune from suit pursuant to the New York Emergency or Disaster Treatment Protection Act ("EDTPA"), NY Public Health Law Article 30-D (§§ 3080-3082), and NY Executive Order 202.10, and the Federal Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e.
By Decision and Order dated October 21, 2024, the Court denied Defendant's motion to dismiss the Complaint pursuant to CPLR §3211(a)(2) and §3211(a)(7), except to the extent that Plaintiff's negligence per se cause of action was dismissed without opposition.
Defendant moves pursuant to CPLR §2221, to resettle and/or modify the Court's Decision and Order to clarify that the PREP Act remains a viable defense, or, in the alternative, to reargue its motion to dismiss as to that defense.[FN2]

DISCUSSION
In moving to resettle and reargue its prior motion to dismiss, WCRN asserts that "it is unclear whether this Court intended to bar [it] from raising the PREP Act as a substantive defense after discovery". Affirmation in Support at ¶ 22, NYSCEF Doc No. 85. WCRN contends that if the Court intended to bar WCRN from raising the PREP Act after discovery, . . . the Court misapprehended the law with respect to its analysis of the PREP Act." Id. at ¶ 26.
WCRN casts its motion in an unusual light, almost appearing to seek an advisory opinion. The immunity defense under the PREP Act which WCRN raised in its prior pre-answer motion to dismiss was not stricken or dismissed by the Court. There was no cross-motion seeking such relief. As such, the defense remains viable. In fact, WCRN has since filed its [*2]Answer asserting several affirmative defenses based upon the PREP Act, including immunity from liability (Twentieth) and preemption of all causes of action (Twenty-First).
To the extent that WCRN contends that the Court misapprehended the law and overlooked one of the bases of its motion to dismiss, namely CPLR §3211(a)(7), the Court grants WCRN's motion to reargue to more fully consider the grounds for dismissal based upon the immunity defense under the PREP Act.
The PREP Act was enacted by Congress in 2005 to provide immunity from suit and liability to covered individuals during a public health emergency declared by the United States Secretary of Health and Human Services. Upon such declaration and publication of recommended "covered countermeasure[s]", "covered person[s]" are granted immunity from suit and liability from "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . " .
The pertinent section of the PREP Act reads as follows:
Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if [the Secretary of Health and Human Services has made] a declaration [that a disease or other health condition constitutes a public health emergency] has been issued with respect to such countermeasure. (42 USCA § 247d-6d(a)(1))
Section 247d-6d(a)(2)(B) states that the scope of immunity under the PREP Act
applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.
The PREP Act delegates to the Secretary of Health and Human Services the authority to determine "that a disease or other health condition or other threat to health constitutes a public health emergency . . . [and] recommend[] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures . . . ". 42 USC § 247d-6d(b)(1).
Pursuant to that delegation, the Secretary issued the Declaration Under the [PREP Act] for Medical Countermeasures Against COVID-19 on March 17, 2020. Declaration, 85 FR 15198-01, 2020 WL 1245193 (F.R.).[FN3]

Consistent with the PREP Act, the Declaration affirms that a "covered countermeasure" must be a "qualified pandemic or epidemic product," or a "security countermeasure". Id. The Declaration defines "qualified pandemic or epidemic product" and "security countermeasure" as follows:
A qualified pandemic or epidemic product means a drug or device, as defined in the [*3]FD&C Act or a biological product, as defined in the PHS Act that is (i) manufactured, used, designed, developed, modified, licensed or procured to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic or limit the harm such a pandemic or epidemic might otherwise cause; (ii) manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by such a drug, biological product, or device; (iii) or a product or technology intended to enhance the use or effect of such a drug, biological product, or device.
A security countermeasure is a drug or device, as defined in the FD&C Act or a biological product, as defined in the PHS Act that (i)(a) The Secretary determines to be a priority to diagnose, mitigate, prevent, or treat harm from any biological, chemical, radiological, or nuclear agent identified as a material threat by the Secretary of Homeland Security, or (b) to diagnose, mitigate, prevent, or treat harm from a condition that may result in adverse health consequences or death and may be caused by administering a drug, biological product, or device against such an agent; and (ii) is determined by the Secretary of Health and Human Services to be a necessary countermeasure to protect public health. (Id.)
WCRN acknowledges that the PREP Act and the Secretary's Declaration do not define the term "use", but it argues that "it would plainly apply to the use of PPE and similar devices to mitigate the spread of COVID-19 within a facility." NYSCEF Doc # 8 at p 10. In addition, WCRN states that the Secretary defines the term "administration" in the Declaration to include more than direct physical provision of countermeasures, to also encompass the "management and operation" of "countermeasure programs" and "locations" and could even encompass a slip-and-fall or a vehicle collision.
WCRN contends that Plaintiff's allegations in the Complaint that WCRN "[f]ailed to provide, maintain, monitor and/or employ standard contact and droplet precautions and PPE; . . . [f]ailed to provide positive or symptomatic patients with surgical masks and other protective interventions to help reduce transmission; [f]ailed to purchase, provide, maintain, monitor and/or employ adequate PPE;" and to "[f]ailed to follow, encourage, and enforce proper mask wearing procedures and protocols . . . ", Complaint at ¶ 165(h), (k), (q) and (gg) at pp 37-38, "places directly into issue [WCRN's] use and administration of covered countermeasures for infection control, including various 'activities and decisions' involved in the systematic distribution, use, and allocation of PPE to mitigate the spread of COVID-19." Memorandum of Law in Support of Defendant's Pre-Answer Motion to Dismiss at p 10, NYSCEF Doc # 8. Consequently, WCRN argues, such allegations bring Plaintiff's claims within the ambit of the PREP Act and WCRN is entitled to immunity from suit and liability. WCRN asserts that the PREP Act only allows a federal claim for "willful misconduct" and deprives this Court of subject matter jurisdiction for any state law claim that comes within the scope of the statute.
Plaintiff opposes WCRN's motion, arguing that WCRN seeks to unreasonably expand the definition of covered countermeasure and ignores the fact that the Complaint does not allege that the administration to Plaintiff, or the selective administration to others and not to her, of any product, drug or device caused her death. Plaintiff contends that the allegations in the Complaint concerning WCRN's failure to implement the requisite infection control and prevention policies and procedures to avoid her contracting COVID-19 falls outside the ambit of the PREP Act.
In reviewing a motion to dismiss for failure to state a cause of action, the court must [*4]liberally construe the pleadings, accept the allegations as true and accord the plaintiff all possible favorable inferences. Sassi v Mobile Life Support Servs., Inc., 37 NY3d 236, 239 [2021]; Doe v Bloomberg, L.P., 36 NY3d 450, 454 [2021].
Plaintiff's Complaint asserts numerous allegations of WCRN's failure to provide adequate infection control procedures, sufficient skilled nursing, and cleaning of its facility which have nothing to do with the use or administration of covered countermeasures. For example, in paragraph 165 of the Complaint, Plaintiff alleges that WCRN:
d. Failed to screen all residents
. . .
f. Failed to frequently obtain vitals for all residents, including JENNIFER JONES, for signs/symptoms of a respiratory distress, fever, cough, all of which are known signs/symptoms of COVID-19;
g. Failed to timely isolate residents suspected and/or symptomatic of COVID-19 from the general resident population;
. . .
i. Failed to ensure sufficient levels of staff to provide skilled nursing care and treatment to all residents,
. . .
l. Failed to immediately isolate residents identified with symptoms of fever and lower respiratory illness, including, but not limited to cough, shortness of breath, and sore throat;
. . .
o. Failed to disinfect frequently touched surfaces at a minimum of every two hours with EPA registered and approved products;
p. Failed to adhere to, and/or have in place, cleaning and disinfection policies and procedures;
. . .
w. Negligently accepted new admissions and/or re-admissions of residents that were symptomatic and/or tested positive for COVID-19;
x. Negligently cohorted suspected and/or positive COVID-19 residents with (at the time) non-COVID-19 residents . . .
These allegations do not arise from WCRN's use or administration of covered countermeasures.
WCRN urges the Court to adopt the expansive scope of immunity applied in the HHS Advisory Opinions. WCRN claims that only a minimal causal nexus is required between WCRN's infection control activities and its use and administration of various covered countermeasures at the facility. WCRN argues that deference to the agency's broad interpretation of immunity is warranted.
The Court rejects WCRN's expansive approach to PREP Act immunity, which seeks to bring within its scope the entire operation of its facility during the COVID-19 pandemic when Plaintiff was a resident of their facility. WCRN's approach is not consistent with the Appellate Division Second Department's decision in Kluska v Montefiore St. Luke's Cornwall, 227 AD3d 690, 692 [2nd Dept 2024], which stated that "[u]nder the PREP Act, the scope of immunity 'applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, [*5]development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure'." (quoting 42 USC § 247d-6d [a] [2] [B]). The Appellate Division held that there was no dispute as to whether the ventilator used on the plaintiff was a covered countermeasure, however, the parties disputed whether the pressure ulcers he suffered resulted from using the ventilator, such that defendant was not entitled to dismissal of the complaint pursuant to CPLR §3211 (a) (7). Further, citing Solomon v St. Joseph Hospital, 62 F4th 54, 61 n 4 [2nd Cir 2023], the appellate court held that the action was not subject to dismissal pursuant to CPLR §3211 (a) (2) for lack of subject matter jurisdiction because the plaintiffs stated cognizable state law claims which were not subject to PREP Act immunity.
This Court finds persuasive federal cases such as Testa v Broomall Operating Company, L.P., 622 F Supp 3d 4 [ED Pa 2022], which found similar allegations to those asserted by Plaintiff concerning "the shortcomings in the care [the facility] provided its residents and [its] failure to take measures to prevent [the plaintiff] from contracting COVID-19 . . . do not arise out of [the facility's] use of covered countermeasures, so the PREP Act does not shield it from liability." Id. at 11. The Court also similarly declines to adopt the expansive scope of immunity expressed in HHS Advisory Opinions. Id. (stating that "a plethora of other courts have likewise rejected its expansive interpretation [of PREP Act immunity]" and citing e.g., Beaty v Delaware Cty., Civ. No. 21-1617, 2021 WL 4026373, at *2 [ED Pa Aug. 5, 2021] (rejecting the defendant's invitation to follow the "HHS's advisory opinions and declarations, which purport to expand the PREP Act's scope"); see also Jones v Legacy Mgmt. Grp. of La. LLC, CASE NO. 6:21-CV-00838, 2021 WL 3416993, at *3 [WD La July 7, 2021] ("The opinion cites no supporting authority for its interpretation and explicitly states that it does not have the force or effect of law.")).
Several courts have held that a nursing home's failure to use covered countermeasures or infection protocols does not trigger PREP Act immunity. Hatcher v HCP Prairie Vill. KS OPCO LLC, 515 F Supp 3d 1152, 1160 [D Kan 2021], appeal dismissed, No. 21-7017, 2021 WL 4768299 [DC Cir Sept. 28, 2021) (denying the defendant's motion to dismiss on PREP Act immunity grounds where the plaintiff alleged, among other things, that the defendant "facility failed to adequately clean and disinfect common areas" and "that safety protocols were not carried out"); Ruiz v ConAgra Foods Packaged Foods, LLC, No. 21-CV-387-SCD, 2021 WL 3056275, at *4 [ED Wis July 20, 2021] ("Here, because the amended complaint alleges that Ruiz contracted COVID-19 because of ConAgra's failure to implement adequate countermeasures, the PREP Act's immunity provision does not apply."); see also Hudak v Elmcroft of Sagamore Hills, 58 F 4th 845, 857 [6th Cir 2023] (an "entity would not receive immunity under the PREP Act for injuries unrelated to its provision of the covered countermeasure solely because it provides countermeasures.").
The Court declines to follow the cases cited by WCRN, which apply immunity under the PREP Act much more broadly than is reasonable and too early in the litigation. Through discovery the parties may flesh out what countermeasures are integral to Plaintiff's claims and whether their use or administration caused her death. The plain language of the PREP Act, as quoted in Kluska, requires "a causal relationship with the administration to or use by an individual of a covered countermeasure". Kluska, supra at 692 (quoting 42 USC § 247d-6d [a] [2] [B]). At this pre-answer stage of the case, dismissal is not warranted under either CPLR [*6]§§3211(a)(2) or (a)(7).
SUMMARY
It is hereby
ORDERED that Defendant's motion to reargue is granted and, upon reargument, Defendant's motion to dismiss the Complaint based upon PREP Act immunity is denied.
The foregoing constitutes the Decision and Order of the Court.
The parties are reminded that a compliance conference in person is scheduled for May 21, 2025, at 9:30 a.m.
Dated: May 13, 2025
White Plains, New York
E N T E R
HON. PAUL I. MARX, J.S.C.

Footnotes

Footnote 1:On March 28, 2020, Ms. Jones was transferred from WCRN to Montefiore New Rochelle Hospital where she died on March 29, 2020.

Footnote 2:WCRN does not seek to reargue the Court's Decision and Order as to its EDTPA defense.

Footnote 3:Thereafter, the Secretary amended the Declaration more than once and issued Advisory Opinions interpreting the Act.